UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINT WHITE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MANCINI'S SLEEPWORLD, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-03295-HSG<br><br>**ORDER GRANTING MOTIONS TO SET ASIDE DEFAULT**<br><br>Re: Dkt. Nos. 26, 27 |

Pending before the Court are the motions to set aside default as to Defendants Mancini's Sleepworld and Marie Higgins. *See* Dkt. Nos. 26, 27. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motions.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Clint White and Kathryn L. Lopez filed this action under the Employee Retirement Income Security Act ("ERISA") on May 14, 2020. Dkt. No. 1 ("Compl."). Plaintiffs contend that their brother and stepson, respectively, Mr. David James Lopez, participated in a 401(k) retirement account with Defendant Mancini's Sleepworld before his death.[1] *See id.* at ¶¶ 1–2, 8. They allege that Defendant Marie Higgins was one of the administrators responsible for managing the 401(k) plan and that Defendant ADP Payroll Services, Inc. held all the funds in the 401(k) plan, including those for the decedent's account. *See id.* at ¶¶ 4, 9–10. Plaintiffs further allege that ADP controlled the means for changing account beneficiaries and disbursed funds from

---

[1] To avoid confusion between the parties and Mr. Lopez, the Court refers to him throughout as "decedent."

the 401(k) plan. *See id.* at ¶ 10.

According to Plaintiffs, they believe that the decedent had named one or both of them as the beneficiary of his 401(k) account, advising them to use the funds for the benefit of the decedent's minor child. *See id.* at ¶ 11. In July 2019, the decedent was "hospitalized with a medical condition that left him incapacitated," and he passed away shortly thereafter. *Id.* at ¶ 12. On information and belief, the beneficiary on the 401(k) account was changed after decedent's death. *Id.* at ¶ 16. And all funds from the 401(k) account were disbursed to third-party Brandy LaRue. *Id.* at ¶ 17. Plaintiffs allege that had Defendants reviewed the decedent's death certificate prior to disbursing the funds, they would have seen that the beneficiary changed after the decedent's death. *See id.* at ¶¶ 15, 17. On the basis of these facts, Plaintiffs allege causes of action against Defendants for breach of fiduciary duties and denial of benefits, and seek equitable relief under ERISA. *See id.* at ¶¶ 18–35.

**B.    Procedural History**

Defendants did not initially answer the complaint. Plaintiffs therefore sought entry of default against Mancini's Sleepworld on July 6, and against Ms. Higgins on July 15, 2020. Dkt. Nos. 11, 15. The clerk subsequently entered default against Mancini's Sleepworld on July 8, and against Ms. Higgins on July 20, 2020. Dkt. Nos. 13, 19. Before Plaintiffs sought entry of default against ADP, ADP and Plaintiffs entered into a stipulation to extend the time for ADP to respond to the complaint, and ADP filed its answer on July 20, 2020. *See* Dkt. Nos. 12, 16. On July 31, 2020, Mancini's Sleepworld and Ms. Higgins filed the pending motions to set aside default. Dkt. Nos. 26, 27.

**II.    LEGAL STANDARD**

The Court has discretion to set aside a default or a default judgment. *See* Fed. R. Civ. P. 55(c), 60(b); *Brandt v. Am. Bankers Ins. of Florida*, 653 F.3d 1108, 1111–12 (9th Cir. 2011). Under Rule 55(c), a court may set aside an entry of default for "good cause." *See United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). To determine whether a defendant has shown good cause to justify vacating entry of default, a court considers three factors: (1) whether the defendant engaged in culpable conduct that led to the

2

1  default; (2) whether the defendant lacked a meritorious defense; and (3) whether reopening the
2  default would prejudice the plaintiff. *See id.* (citing *Franchise Holding II, LLC v. Huntington
3  Rests. Group., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004)). This standard is disjunctive, meaning the
4  court may deny the request to vacate default if any of the three factors is true. *See id.* (citing
5  *Franchise Holding*, 375 F.3d at 925). As the party seeking to set aside entry of default, a
6  defendant bears the burden of showing good cause under this test. *Hawaii Carpenters' Trust
7  Fund v. Stone*, 794 F.2d 508, 513–14 (9th Cir. 1986). "Crucially, however, 'judgment by default
8  is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be
9  decided on the merits.'" *Mesle*, 615 F.3d at 1091.

When considering whether to vacate entry of default under Rule 55(c), the Court's "underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters'*, 794 F.2d at 513. The inquiry "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt*, 653 F.3d at 1111 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Ass'n Ltd.*, 507 U.S. 380, 395 (1993)). The decision ultimately lies in the discretion of the court. *Id.* at 1111–12. To ensure that cases are decided on the merits whenever possible, the court resolves any doubt regarding whether to grant relief in favor of vacating default. *See O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

### III.    ANALYSIS

As a preliminary matter, the Court notes that Plaintiffs filed their opposition briefs on August 20, 2020, six days after the August 14, 2020, deadline, and only after Mancini's Sleepworld and Ms. Higgins filed their reply briefs in support of their motions to set aside default. *See* Dkt. Nos. 41–42, 43–44. Only after the deadline had passed, and four days after filing their late opposition briefs, did Plaintiffs file an administrative motion to enlarge time to file the oppositions. Dkt. No. 45. Plaintiffs' counsel explained that she did not calendar the deadline properly, though she could not determine how the error occurred. *See id.* at 3. Her calendar reflected August 21, 2020, as the final day to file an opposition. *See* Dkt. No. 45-1 at ¶ 3. Counsel asks the Court to accept this missed deadline without further explanation.

The Court understands that the COVID-19 pandemic has created unprecedented personal and professional challenges for individuals across the country. However, the Court still expects all counsel to monitor their cases diligently and to seek additional time proactively when needed. Further, the irony here is not lost on the Court: Plaintiffs ask the Court to excuse their mistake, when they declined to extend the same courtesy to Mancini's Sleepworld and Ms. Higgins. Still, with the expectation that Plaintiffs' counsel will abide by all court-imposed deadlines in future, the Court will consider Plaintiffs' oppositions and addresses Defendants' motions on the merits below.

In evaluating whether good cause exists to justify vacating entry of default, the Court addresses each of the three factors in turn. *See Mesle*, 615 F.3d at 1091.

*First*, Mancini's Sleepworld and Ms. Higgins explain that they inadvertently missed the deadline to respond to the complaint because they believed at the time that ADP was coordinating the defense for all Defendants in this action. *See* Dkt. No. 26 at 3–5; Dkt. No. 27 at 3–5. The Ninth Circuit has explained that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (quotation omitted) (emphasis in original). The term "intentionally" in this context "means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (quotation omitted).

Plaintiffs do not appear to suggest that either Mancini's Sleepworld or Ms. Higgins have acted in bad faith. *See* Dkt. Nos. 43, 44. Nor could they on the record before the Court. Mancini's Sleepworld and Ms. Higgins moved swiftly to secure counsel and set aside the entry of default upon learning of their mistake. *See* Dkt. No. 26-1 at ¶¶ 2–6; Dkt. No. 27-1 at ¶¶ 2–8. The President of Mancini's Sleepworld further explained that the company had "completely shut down" due to COVID-19, and had only a fraction of its ordinary workforce at the time this action was filed, with the result that its processes for handling litigation were diminished. *See* Dkt. No. 27-1 at ¶¶ 3–4. It mistakenly believed that the extension ADP was seeking to file its answer

4

would also apply to Mancini's Sleepworld and Ms. Higgins. *See id.* at ¶ 5. Mancini's Sleepworld also promptly reached out to Plaintiffs' counsel for a similar extension just days after entry of default, but Plaintiffs would not agree to the extension. *See id.* at ¶¶ 6, 8; *see also id.*, Ex. A.

*Second*, the Court finds that setting aside the entry of default would not prejudice Plaintiffs. ADP only recently answered the complaint. *See* Dkt. No. 16. The initial case management conference has not yet been held. *See* Dkt. No. 37. And no schedule has been set in this case. Moreover, Plaintiffs and ADP have proposed a schedule in which trial will not occur until July 2021. *See* Dkt. No. 36 at 5. Even assuming the Court were to adopt this proposal, there is ample time for Mancini's Sleepworld and Ms. Higgins to meaningfully participate in this action. Indeed, Mancini's Sleepworld and Ms. Higgins have prepared and submitted their draft answers as part of their motions, so any delay would be minimal. *See* Dkt. No. 26-1, Ex. A; Dkt. No. 27-1, Ex. B. Again, Plaintiffs do not appear to challenge the motions on this basis. *See* Dkt. Nos. 43–44.

*Lastly*, the Court finds that Mancini's Sleepworld and Ms. Higgins have "present[ed] specific facts that would constitute a defense" to Plaintiffs' claims against them in this action. *Mesle*, 615 F.3d at 1094. In particular, they assert:

- Ms. Higgins is not the administrator of the 401(k) plan. *See* Dkt. No. 26-1, Ex. A at ¶ 54.
- Plaintiffs have not exhausted their administrative remedies as required under the plan. *See* Dkt. No. 26-1, Ex. A at ¶ 40; Dkt. No. 26-7, Ex. B at ¶ 40.
- Even if this did not preclude their claims, Plaintiffs are not the rightful beneficiaries under the plan. *See* Dkt. No. 26-1, Ex. A at ¶¶ 30, 39; Dkt. No. 27-1, Ex. B at ¶¶ 30, 39. Rather, Ms. LaRue was the designated beneficiary. *See* Dkt. No. 26-1, Ex. A at ¶ 17; Dkt. No. 27-1, Ex. B at ¶ 17. They also deny that the beneficiary on the account was changed after the decedent's death. *See* Dkt. No. 26-1, Ex. A at ¶ 16; Dkt. No. 27-1, Ex. B at ¶ 16.
- Mancini's Sleepworld and Ms. Higgins properly followed all plan procedures and applicable standards under ERISA such that they cannot be held accountable for any

third-party's fraudulent conduct.  *See* Dkt. No. 26-1, Ex. A at ¶¶ 48, 50–51; Dkt. No. 27-1, Ex. B at ¶¶ 48, 50–51.

- Additionally, to the extent Plaintiffs allege a state-law fiduciary duty claim in their first cause of action, Mancini's Sleepworld and Ms. Higgins argue that it is preempted by ERISA.  *See* Dkt. No. 26-1, Ex. A at ¶ 38; Dkt. No. 27-1, Ex. B at ¶ 38; *see also* 29 U.S.C. § 1144(a).

Plaintiffs challenge the validity of these defenses, arguing that Defendants previously admitted that they have information regarding the plan's beneficiaries, and that the beneficiary changed after decedent's death.  *See, e.g.*, Dkt. No. 43 at 3–4.  Plaintiffs also argue that Defendants did not proffer evidentiary support, including a copy of the 401(k) plan itself.  *See id.* at 4–5.  However, the burden to show a meritorious defense in support of a motion to set aside default "is not extraordinarily heavy."  *Mesle*, 615 F.3d at 1094.  Defendants need only "allege sufficient facts that, if true, would constitute a defense . . . ."  *Id.*  Plaintiffs may disagree with the veracity of Defendants' assertions and the ultimate merit of these defenses, but the Court need not decide the case in Defendants' favor prior to granting the motions to set aside the default.  *See id.* ("[T]he question whether the factual allegation [i]s true is not to be determined by the court when it decides the motion to set aside the default.") (quotation omitted).  The Court resolves any doubts in favor of granting the motions, as it must, and finds that "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters'*, 794 F.2d at 513.  The Court therefore exercises its discretion to grant the motions to set aside default as to Mancini's Sleepworld and Ms. Higgins.  Plaintiffs will have the opportunity to test the viability of the defenses through this litigation.

Plaintiffs argue in the alternative that the Court should condition any order that sets aside default in order to prevent Defendants' "efforts to hide evidence."  *See* Dkt. No. 43 at 5–7.  The Court finds this wholly unwarranted.  Now that Mancini's Sleepworld and Ms. Higgins have appeared in this action, are represented by counsel, and will soon file their answers to the complaint, Plaintiffs will be able to request information through the discovery process if appropriate and in the ordinary course.  The Court declines the invitation to decide an anticipated,

6

but still theoretical, discovery dispute. Similarly, to the extent Plaintiffs believe that they need to amend their complaint to address any of the issues raised in Defendants' responsive pleadings, they may do so to the extent authorized by Federal Rule of Civil Procedure 15. The Court also denies Plaintiffs' request for attorneys' fees. *See* Dkt. No. 43 at 7. The record reflects that Mancini's Sleepworld attempted to contact Plaintiffs to obtain an extension, Plaintiffs denied this courtesy, and Mancini's Sleepworld and Ms. Higgins ultimately established good cause for setting aside the defaults.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motions to set aside default. Mancini's Sleepworld and Ms. Higgins are **DIRECTED** to file their answers on the docket within five days of the date of this order. The Court further **CONTINUES** the telephonic case management conference to September 22, 2020, at 2:00 p.m. The parties shall file a new, joint case management statement by September 15, 2020. The dial-in information in Dkt. No. 37 for the conference remains the same. This order terminates Dkt. No. 45.

**IT IS SO ORDERED.**

Dated: 9/3/2020

*[signature]*

HAYWOOD S. GILLIAM, JR.
United States District Judge